Mr. Hernandez, good morning. Good morning. My name is Clay Hernandez and I represent the appellant Camilo Mendez-Garcia I'd like to reserve seven minutes Our position is that the government in this case wake up just yes, sir. I'm sorry our Position is that the government in this case paraded in front of the jury a list of prior bad acts Established or connected to my client the appellant only by Unsubstantiated innuendo and they did that through their chief and really only witness to this to these acts Miss Gilliland she was a cooperating defendant and when the court is considering the the facts of this case and how How they apply I'd ask the court to keep in mind a couple of things with regard to this individual Miss Gilliland at the time of her stop and arrest at the port of entry in Arizona Denied wholeheartedly any knowledge or involvement in this marijuana Operation that she was allegedly a part of or that she was a part of they found 600 pounds of marijuana in the motorhome Titled in her name that she was driving. It was only when she was confronted with a statement from her son She's she's a passenger her son was driving They separate him as they want to do and only when confronted with a statement by her son that yeah That's what they were doing and they were transporting this marijuana Did she decide to come forward and cooperate if you will with the with the government? I point that point out because at the beginning of this investigation She wasn't being truthful with the government at the end of the investigation a couple days later when they put this Vehicle in a military cargo plane and transported it all the way to Washington State She was going to deliver it to allegedly to my client. Mr. Mendez Garcia She never did that. She drove around out in the out in the boonies up in Pasco, Washington Big farming area and drove around and for several hours In fact, she got stopped by a local deputy driving around up there and never was able to deliver this marijuana to The people that she said she was supposed to they finally just called the whole thing off. Mr. Mendez Garcia was arrested a few days later But it doesn't stop there the credibility of this witness you go on and look at Six weeks before trial which happened about two years later. She mentions to the government for the first time Oh, by the way, I was selling marijuana myself in that area And and selling this marijuana that I was supposedly transporting that I'd supposedly been paid with Myself I was a dope dealer in the Pasco, Washington area All of this you were able to cross-examine on I was able to cross-examine her on that One thing that apparently the government didn't tell you about prior to trial that she had been paid in the past part in cash part in controlled substances The district court offered you an opportunity for a recess and to conduct further investigation Since the court said we would discuss it the court never actually offered it to me and I asked the court to keep in mind this because when you look at that when you look at that time to to put off we're in the Third or fourth fifth day of trial all of these actions took place in Washington State this trial takes place in Tucson, Arizona We don't have the ability Or means to go in and then and then conduct an investigation or an appropriate investigation We did what we could over the phone during recesses But we weren't able to we weren't able to go back to Pasco, Washington and conduct any sort of information I'm sorry investigate you ask for a recess judge. I asked for a mistrial to an it to No, no, sir. I did not I did not ask for a recess. I did not believe I'll tell the court I did not believe that a recess would be granted my motion for a mistrial Specifically requested to in order to be able to obtain more information and the time required I believe to conduct an appropriate investigation When the court looks at these prior bad acts evidence and and that's what I wanted to focus on first with the court's permission The court has miss Gilliland in the and she's the the person I've described to the court to this point The government makes much use during that time of the actions that she supposedly was engaged in back in May of the same year when she was arrested in November and they talk about a number of things that that supposedly substantiate her testimony or Authenticate her testimony if you will and I'd like to go through a few of them if for you if I can one of the things they talk about is well, she Obtained a cell phone with money that she obtained from my client. These are statements that she made These are statements that she told us about there's no evidence other than her testimony that that was the source of the cell phone the reason for the cell phone or the history to the cell phone the cell phone is some go to her credibility which the jury had an opportunity to you had an opportunity to cross-examiner and the jury had an opportunity to To see her on the stand and to judge her credibility, right if the court's correct it goes to her credibility, but Saying that I got the chance to cross-examiner is is is prophylactic if you will or it took care of any of any problems with that He I think it I think it Either puts a cart before the horse or skirts the issue in that. What am I? What am I? What are my alternatives? I can't have her to take the stand and not cross-examine her about these things I did what I was able to do under the circumstances because all of this information that she put forth Which we submit was unsubstantiated completely was nonetheless put forth before the court in my in my brief I believe I indicate that her testimony about that first trip Which my client wasn't wasn't charged with was a day and a half I'm sorry, her testimony is a day and a half her testimony about the first trip was an entire day and The evidence we have of her test her first trip is one the cell phone to money that she allegedly received from my client and that money if the court will look at the exhibit is my client's name written on the back of an envelope or or a brochure from a hotel in Mexico along with a Confirmation number to obtain money the the name My client's name is written on the on the document But she tells us where the money came from where the phone call came from Who gave who put the money in in in the account and mail it to her? There's no independent evidence of that It is her testimony as to how that money was allegedly transferred to her on the first trip She likewise says that that first trip had to do with an RV full of marijuana The only evidence we have is a is the the government's record of the The motorhome going through the port of entry in May. We don't even know if she's in it There's no evidence to show that she's even in it Except that she's testified that she's in it I mean all of these in some respect counsel are admissions against her interest because they implicated they allow You to impeach her as someone who has previously engaged in bad acts and is admitting to being to engaging in criminal conduct But and that gives you an opportunity to to to impeach her character And gives you an opportunity to question her I get to I get to impeach her character and cross-examine her But what we're what they're doing is putting her prior bad acts of which there's no connection or or no Or no validation with regard to the same motorhome that she drove And the motorhome clearly was purchased by your client and it's titled in her name It's it's purchased by my client several about nine nine months earlier Okay But it is it is purchased by your clients we have we clearly have a paper trail Connecting the motorhome to your client from your client to to miss Gilliland. Well except the courts correct There's some there's somewhat of a paper trail however the court I'd ask court to keep in mind that the motorhome while it's titled in it was purchased by my client according to the Witness from Washington. It is not title. It's not titled in my client's name and miss Gilliland indicates She fraudulently titled the the in prepared fraudulent documents to title the the motorhome in her name So I think the paper trail pretty much stops at the time of the purchase of the vehicle I don't know that the paper trail is as is tighter is as clear as the government would have the court believe You had indicated you wanted to say yes, and that's what I was gonna say. Thank you. Mr. Hernandez. We'll hear from the government for this time Mr. Furr Hey, please court, my name is Bruce Ferg assistant United States attorney on behalf of the government in this case Very simply stated our position is that the prior? Uncharged act evidence was properly admitted on a couple of different grounds and secondly that there was in fact no Brady violation Now I can go through a detailed Legal analysis, but I think the crux of Mr. Hernandez argument so far has been that there was no corroboration Present for the validity of miss Gilliland statements about this earlier uncharged May incident First of all, you don't need corroboration As I pointed out in my brief there are a number of cases including those from the Ninth Circuit which say the evidence of One person as long as they are appearing in person and are subject to cross-examination Is a sufficient basis for the admission of this kind of evidence? But more than that there is in fact Corroboration of various parts of her story. First of all the cell phone It's not just a matter of her having a cell phone Although they are not discussed at length in the trial itself. They were discussed in the Records actually show continuous Ongoing conversations back and forth between miss Gilliland and the defendant beginning in April All the way through the period of the charged episode in November When did the government learn that Gilliland had been paid in part? in the past with drugs Apparently only about two weeks before the actual trial the AOSA when this came up in the course of try the case No, sir. I didn't we did a lady named Maria Avalon or Davila. Excuse me And she when this came up in the course of the examination of miss Gilliland and there was a like a sidebar Discussion she indicated that she had first learned that part of the payment to miss Gilliland was actually in marijuana Not just straight cash about two weeks before when she had been interviewing her prior to some pre-trial motions. Why wasn't it disclosed? Apparently it was simply an error in judgment What she states in the record was that because it had been disclosed that in fact Gilliland had been paid by the defendant She simply didn't perceive that there's anything additionally Inculpatory about the fact that it was marijuana as opposed to straight cash Right, yes, sir I'm in hindsight, obviously it is something that could have been developed further as was in fact done by way of impeachment So are you? Sticking by your prior argument that there was no Brady violation Yes in the sense that Brady requires a number of things Particularly Brady is based on the idea. Let's start. It was not disclosed, right? Well, yes or no because Brady contemplates a complete lack of disclosure Well for two weeks from the time she knew it until the time counsel was told Invade right but Brady contemplates for example A case where evidence is kept so hidden that you only find out about after trial and there are numerous cases from this court saying that even if it's disclosed mid-trial as Long as the reason we have Brady is to Enforce the government to turn square corners Absolutely, and just because it hurts the government's case. In fact a compelling argument can be made that when it Precisely because it does hurt the government's case is the reason that compels its disclosure now What the district court did when it found out? May have ameliorated against the nature of the violation But I must tell you as a former federal prosecutor myself, I I don't find any equivocation here This was a Brady violation There was a lack of disclosure and that's certainly the kind of situation just say it I mean, I think I think it's your stronger argument Is there any Brady violation was cured by what the district court offered to be done and had done And part of which the defense didn't take advantage of but to argue that it wasn't a violation seems to me just to be outside the line Well, perhaps it's because I understand there are certain technical elements of a Brady violation Including whether or not in fact there has been with the government telling the truth right Certainly My understanding and can correct me if I'm wrong is that for a Brady violation as defined by the Supreme Court It's not just a lack of disclosure but in fact whether it was a lack of disclosure at a point in time or To a point in time where the defense was not able to effectively use the information and as this court has already been discussing with Mr. Hernandez, he was in fact able to learn about it and cross-examine in a highly effective way Oh two weeks in advance. He could have gone to the district judge and asked to continue the trial date. I Take it. He's CJA. I Go up to Washington and find out if miss Gilliland was some preyed upon Errant mother who was doing this for economic reasons or some major league drug dealer from the Pacific Northwest Bringing in massive amounts of drugs and making a lot of money from it And which would have been a perfectly appropriate subject of cross-examination, right? He was given that opportunity and he did not during the trial and this court says that's Okay, if he felt that he needed more He could have come back to the court as he'd been invited to and say I need more time But in fact when the court asked him what kind of things would you have developed if you'd been told this two weeks ago? He basically said there were two things how much she received and what did she do with it? And all the prosecutor had to do was the minute she found out about it Pick up the phone and call counsel. I'm not or send a letter, right? I In no way am I disputing that your honor. It should have been done Again perhaps it's a semantic difference Because of my understanding what Brady requires I didn't see it. Is that we understand your argument and I think you get the message Yes, sir, and I will convey it. Certainly you have anything further Well, there is the 404 B evidence I would just briefly indicate Yes, Your Honor, why don't we hear rebuttal? Thank you very much Judge I believe mr. Fergus correct. It was two weeks. I said six weeks. I apologize What I would I ask the court to consider a couple things with regard to Brady Ask you to speak up. I apologize. One of the things I'd ask the court to consider with regard to Brady is this case is rises and falls with their with their cooperating defendant and I believe that when you have a case that is so keenly tied to someone of that nature that Brady the interpretation of Brady and the enforcement of Brady ought to be strict and As a result, I think that I think that There are issues with regard to what she did with that marijuana that were a Brady violation I believe we were prejudiced by that in preparing for this argument today. I look back at the court and we always have hindsight I did try the case, but we always have hindsight as maybe we should have done something better It would have been a much different argument to stand before the jury and say you know what? This is a lady who is a dope dealer she provides her own dope and then she sells it in the Pasco, Washington area versus some lady who was preyed upon by my client to to get to make a trip and make some money and When we started when we did our opening statements and when we had our theory of the case it was basically that she was saying these things to save her own skin with somebody that she knew not that she was a Dope dealer that sold the marijuana that she brought in and I think that that those are Completely different or very different arguments I will also tell the court that I did travel to the Pasco, Washington area pre-trial I think I think about two to three months prior to to that time to meet with the client to look at the scene to talk to the people that I could as far as witnesses go and the the issue of What you find out in trial halfway through a trial judge in the years I've been doing this You you you ask for you ask for a mistrial if you get the information before trial you ask for continuance But I can't tell the court that I've ever had a significant I've tried cases in in other jurisdictions where in a federal court. I've asked for a continuance and I've been given a weekend But it was something that took place in that jurisdiction It wasn't something that took place 1500 miles away or a thousand miles away. And and as a result judge I believe the mistrial was the only appropriate Alternative at that time and that's why we sought it sought it in order to be able to To obtain the information that I thought we we could potentially find Those are the those are the issues I have unless the court has anything else see any other questions counsel Thank you for your both sides for their argument. The case just argued will be submitted for decision Which is the United States against EPS counsel will come forward, please
judges: Lay , Hawkins, Bybee